# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
AUG 30 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. **19MJ3702**
black LG cellular telephone with unknown IMEI )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A-2

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. Section 2113 | Bank Robbery |

The application is based on these facts:
Specified in the attached Affidavit of Special Agent Brian H. Loveland

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brian H. Loveland, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/30/2019

*Judge's signature*

City and state: San Diego, California      Hon. Andrew G. Schopler, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-2
DESCRIPTION OF PROPERTY TO BE SEARCHED

The property/item to be searched is described as:

a black LG cellular telephone with unknown model number and unknown IMEI seized from Ryan W. Nelson's bedroom (the **Target Telephone-2**).

**Target Telephone-2** is currently in the possession of FBI and is being held as evidence in the Southern District of California.

13

*Attachment B for Application*

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular phones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phone(s). The seizure and search of the cellular phone(s) will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular phone(s) will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period from **August 1, 2019 to and including August 29, 2019**:

a. tending to identify attempts to scout, surveil, and rob banks;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the robbing of banks;

c. tending to identify travel to or presence at locations related to the bank robberies;

d. tending to identify the user of, or persons with control over or access to, the subject telephone(s); and/or

e. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 18, United States Code, Sections 2113(a).**

14

# AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR WARRANTS TO SEARCH CELLULAR TELEPHONES

I, Brian H. Loveland, being duly sworn, declare and state:

## INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been so since January 2018. I am currently assigned to the Violent Crimes Task Squad of the San Diego Field Office where I primarily investigate criminal violations relating to bank robberies, in violation of Title 18 U.S.C. Section 2113. I have received training in interviewing and interrogation techniques, arrest procedures, surveillance, the execution of searches and seizures, and various criminal laws and procedures. I am authorized to investigate violations of the laws of the United States and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

2. The result of my training and experience, and my conversations with other Special Agents of the FBI, and Task Force Officers (TFOs), as well as Detectives and Officers and other local investigators familiar with violent crime, and bank robberies, form the basis of opinions and conclusions set forth below, which I drew from the facts set forth herein. Dates and times outlined below are approximate.

3. I make this affidavit, in part, based on personal knowledge derived from my participation in this investigation and, in part, based upon information from: (a) oral and written reports about this investigation which I have reviewed; (b) physical surveillance conducted by federal agents or local law enforcement agents, which observations have been reported to me either directly or indirectly; and (c) statements of cooperating individuals.

4. Except as otherwise noted, information set forth in this affidavit has either been observed or provided to me by law enforcement officers with whom I have spoken, who were involved in this investigation, or whose reports I have read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth my own observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

5. Because this affidavit is being submitted for the limited purpose of seeking the search warrant specified below, I have not set forth each and every fact learned during the course of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested warrant.

6. I respectfully submit that the facts contained in the numbered paragraphs below demonstrate that there is probable cause to believe that electronic evidence of bank robberies, in violation of 18 U.S.C. § 2113, as described in Attachment B, will be found in:

    a. a black/silver LG cellular telephone, Model LM-Q720MS, IMEI 356284101403822 (**Target Telephone 1**); and

    b. a black LG cellular telephone with unknown model number and unknown IMEI seized from Ryan W. Nelson's bedroom (**Target Telephone 2**) ;

(collectively, **Target Telephones**) as described in Attachments A-1 and A-2, which are currently being held as evidence in the Southern District of California.

## PROBABLE CAUSE

7. Since August 15, 2019, the FBI has been investigating bank robberies by an unknown suspect, dubbed the "Big Cheese Bandit," from his distinctive "toothy" grin displayed during his first bank robbery.

8. On August 15, 2019, at approximately 10:10 a.m., there was a robbery at the US Bank located within the Vons Supermarket at 6155 El Cajon Boulevard, San Diego, California. Based on interviews with witnesses and reviewing surveillance footage, investigators learned the suspect entered the store and approached the teller station, while appearing to talk on his cell phone, and gave the victim teller step-by-step verbal commands, demanding the teller to give him money by stating something similar to, "Grab a bag. Start with the hundreds. Put all the money in the bag and give it to me, or I'm gonna shoot." The teller complied with demands and provided the suspect with money from his teller drawer, totaling $1,372. Prior to fleeing, the suspect told the victim teller, "Wait

2

1  seven minutes, I've got someone in the store." The suspect then turned and exited the bank
2  area, leaving out the east exit of the Vons Supermarket.

3    9.    The suspect was described as a light-skinned black male, approximately 5'10" in height, a thin build, and approximately late 20 to early 30 years-of-age. The suspect had a shaved head with stubble, and short, stubble beard hair, and wore a black bomber-style jacket and black, square-rimmed sunglasses. U.S. Bank provided the following image of the suspect:



10.   On August 23, 2019, at approximately 11:56 a.m., the Wells Fargo located within the Vons Supermarket at 8011 University Avenue, La Mesa, California was robbed. Investigators interviewed witnesses and review surveillance footage and learned that the suspect approached bank's teller station row while appearing to talk on his cell phone, and then demanded money from the three victim tellers by giving step-by-step verbal commands, stating something similar to, "Start with your 100s and put them in a bag, or I'll start shooting." The tellers complied with the demands and provided the suspect with a

3

1 bag containing money from each of the teller's drawers totaling $9,600.00. The suspect
2 then turned and exited the bank area, leaving out of the Vons Supermarket main entrance.

3     11.    The suspect was described as a light-skinned black male, approximately 5'8"
4 in height, and early 30 years-of-age. The suspect had a shaved head with stubble and wore
5 a white t-shirt, dark colored pants, and a blue backpack. The suspect had a distinctive tattoo
6 on his forearm of a cross with a date underneath. Surveillance photographs from Wells
7 Fargo provided the following images of the suspect:



4



12. Both banks were all insured by the Federal Deposit Insurance Corporation at the time of the robberies.

13. Subsequent to each robbery, local police and FBI conducted a local canvas in the immediate vicinity of each bank. FBI Agents identified a San Diego Metropolitan Transit System (MTS) Trolley Stop, known as the La Mesa Boulevard Station, located approximately 0.3 miles east of the Wells Fargo located within the University Avenue Vons Supermarket. FBI Agents contacted San Diego Transit Enforcement and provided details of the robbery as well as surveillance photos provided by Wells Fargo Bank. San Diego Transit Enforcement provided surveillance photograph of the suspect at the La Mesa Boulevard Station at approximately 12:02 PM, approximately six minutes after the robbery of the Wells Fargo. San Diego Transit Enforcement provided the following photograph:



14. San Diego Transit Enforcement identified that the suspect exited the MTS trolley at the 62nd street and Encanto station. From the MTS Compass Card identified as being used by the suspect at the La Mesa Boulevard Station, the suspect was identified as frequently boarding MTS busses at the Woodman Street and Bullock Drive bus stop approximately 1.5 miles south of the 62nd street and Encanto Trolley Station.

15. On August 28, 2019, San Diego Transit Enforcement notified FBI Agents that the Compass Card used by the suspect during the August 23, 2019 robbery of the Wells Fargo Bank was not currently registered in anyone's name but had been registered to a Ryan Nelson from September 25, 2018 to November 28, 2018.

16. A search of California Department of Motor Vehicles (DMV) identified a Driver's License Photo for Ryan W Nelson, Date of Birth (DOB) January 25, 1982:

6

17. A review of California DMV databases identified that Ryan W. Nelson had a registered address of 1585 Parkland Way, San Diego, California (Nelson's Residence) for his Commercial Driver's License. Nelson's Residence is approximately 0.2 miles from the Woodman Street and Bullock Drive MTS Bus Stop.

18. On August 28, 2019, at approximately 2:19 p.m., members of the San Diego Violent Crimes Task Force were conducting surveillance at the Nelson's Residence, a single-story residence, when the suspect, matching the description of Ryan W. Nelson, exited the a gold BMW with California License Plate 8JRL610 (Nelson's Vehicle) parked in the driveway of Nelson's Residence, and entered the house:

7



19. On August 29, 2019, investigators executed federal search warrants issued by the Honorable Andrew G. Schopler and searched Nelson's Residence and Vehicle. During the search of the residence, a loaded, black semi-automatic handgun, a pair of black sunglasses with black frames, a black bomber-style jacket, a black t-shirt, dark colored pants with white stripes down the side, a black cell phone, a navy blue-colored backpack, and a large black wristwatch, all similar in appearance to the ones worn by Nelson while conducting the two bank robberies, were found and seized.

20. Investigators seized **Target Telephone-1** and $2,030.00 in U.S. currency from Nelson's person and **Target Telephone-2** from Nelson's bedroom within Nelson's Residence and booked them into evidence with FBI in the Southern District of California.

## BASIS FOR EVIDENCE SOUGHT IN SEARCH WARRANTS

21. Based upon my training and experience, consultation with other law enforcement officers experienced in robbery investigations, and all the facts and opinions set forth in this affidavit, I believe that probable cause exists that the **Target Telephones** were used by Nelson and will contain electronic evidence of the U.S Bank and Wells Fargo bank robberies described above.

22. In addition, I know that individuals engaged in robberies often use their cell phones and electronic media to conspire, plan and coordinate their criminal activities and that cellphones and electronic media retain evidence of their crimes such as communications, photographs, videos, contact information of co-conspirators, location data, travel arrangements, media about the robberies they committed, research on how to successfully commit robberies, and financial data that evidence their robbery activities, and usually maintain their cell phones on their person and/or their residence and vehicles.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

23. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.

1  Even if some of the stored information on the device may be acquired forensically, not all
2  of the data subject to seizure may be so acquired. For devices that are not subject to
3  forensic data acquisition or that have potentially relevant data stored that is not subject to
4  such acquisition, the examiner must inspect the device manually and record the process
5  and the results using digital photography. This process is time and labor intensive and may
6  take weeks or longer.

7  24. Following the issuance of this warrant, I will collect the subject cellular
8  telephone(s) and subject it to analysis. All forensic analysis of the data contained within
9  the telephone and its memory cards will employ search protocols directed exclusively to
10 the identification and extraction of data within the scope of this warrant.

11 25. Based on the foregoing, identifying and extracting data subject to seizure
12 pursuant to this warrant may require a range of data analysis techniques, including manual
13 review, and, consequently, may take weeks or months. The personnel conducting the
14 identification and extraction of data will complete the analysis within ninety (90) days of
15 the date the warrant is signed, absent further application to this court.

16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## CONCLUSION

26. Based upon my training and experience, and the facts so far, there is probable cause to believe evidence of violations of 18 U.S.C. 2113 (Bank Robbery) will be found in the **Target Telephones**, as described in Attachments A-1 and A-2. Therefore, I seek authorization to search them for evidence of Bank Robberies, as described in Attachment B.

_____
Brian H. Loveland, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me this 30th day of August, 2019.

_____
HONORABLE ANDREW G. SCHOPLER
United States Magistrate Judge

11